IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD MURRAY, III,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0771-WS-M |
| ) | |
| **HOLIDAY ISLE, LLC,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

On May 13, 2009, the morning on which the non-jury trial of this action was set to commence, the parties notified the Court that they had reached an agreement that would obviate the need for trial.  Counsel for all parties met with the undersigned in chambers for an off-the-record discussion concerning the settlement.  At that time, counsel explained that four plaintiffs (Arthur Fitzner, Celeste Taylor, John Gardner and Tracy Gardner) had reached a monetary settlement with Holiday Isle under which they would receive 50% of their letter of credit proceeds in exchange for dismissing their claims.  Counsel stressed that this agreement was subject to certain contingencies, specifically bankruptcy court approval and disbursement of funds in the interpleader action.[1]  With respect to the other three plaintiffs (Jay Murray, Lisa

---

[1] No mention was made during that meeting of any agreed-upon condition that certain Florida purchasers represented by plaintiffs' counsel in other proceedings against Holiday Isle must accept the same deal in order for the Fitzner/Taylor/Gardner settlements to take effect.  That said, this Court did not require the parties to recite all terms and conditions of their settlement during that in-chambers meeting.  It is the undersigned's practice not to become immersed in the minutiae of settlement terms in pending cases, and it is the parties' sole responsibility to memorialize the terms of any settlement reached in an appropriate manner to protect their respective interests.  Here, counsel merely explained that certain contingencies might prevent the Fitzner/Taylor/Gardner settlement from taking root.  On that basis, the Court allowed the parties 60 days to investigate and attempt to resolve those issues; however, the Court never demanded of counsel a comprehensive itemization of all terms and conditions of settlement.  As such, the undersigned has no knowledge of whether acceptance by plaintiffs' counsel's Florida clients of the same settlement terms to which Holiday Isle agreed with Fitzner, Taylor and the Gardners was or was not a condition of the deal.

Murray and Richard Murray, III), counsel explained that no settlement had been reached, but that the parties had agreed to submit those claims to arbitration along with those of various other claimants in related proceedings.

Based on counsel's representations to the undersigned in chambers, the Court entered an Order (doc. 130) on May 13, 2009, dismissing the Fitzner, Taylor and Gardner claims with prejudice, subject to the right of any party to reinstate those claims within 60 days if the settlement could not be consummated for any reason. The May 13 Order likewise stayed all claims involving the Murrays, and referred those claims to arbitration, pursuant to the parties' agreement. These directives remain in place at this time.

On May 18, 2009, a scant five days after the parties announced their settlement, plaintiffs filed a Motion to Enforce Settlement Agreement (doc. 131). According to the Motion, plaintiffs' counsel notified defendant's counsel on May 14 that while five of her seven Florida clients in separate proceedings against Holiday Isle would accept the same 50% deal that Fitzner, Taylor and the Gardners did, the other two demanded no less than 65% of their security deposits to settle their claims against Holiday Isle. The Motion further states that, in response to this information, defendant's counsel notified plaintiffs' counsel that the partial settlement in this case would not be honored unless all of the Florida clients (who are not parties herein) accepted the same 50% offer that Fitzner, Taylor and the Gardners did. On the basis of these allegations, coupled with gratuitous accusations of bad faith, plaintiffs' counsel requests that the undersigned "require Holiday Isle to honor its settlement arrangement with the above Plaintiffs and ... enter an Order that Holiday Isle file for bankruptcy Court approval of the settlement agreement and a Motion to Disburse funds in the interpleader action." (Doc. 131, at 2.)

It is well settled that a federal court has no inherent power to enforce a settlement agreement simply because it was reached in connection with a lawsuit in the federal forum. Rather, there must be either "some independent basis for federal jurisdiction," or the Court must possess ancillary jurisdiction because "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal." *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 380-82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As *Kokkonen* explained, enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. For that reason,

the Court applies the bright-line rule that "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.  The Court perceives no independent basis for federal jurisdiction over this incipient settlement controversy; after all, the Complaint (doc. 1) predicated federal jurisdiction solely on 28 U.S.C. § 1331, and reflected that the parties are not of diverse citizenship.  No independent basis for federal jurisdiction over the settlement enforcement issue has been suggested.  Moreover, the May 13 Order of dismissal neither obligated the parties to comply with their settlement agreement nor otherwise escalated any breach of the settlement agreement into a violation of the Order; thus, ancillary jurisdiction under *Kokkonen* is lacking.  Accordingly, insofar as plaintiffs are requesting that this Court enforce their construction of the settlement agreement, their Motion to Enforce Settlement Agreement (doc. 131) is **denied** for lack of jurisdiction.[2]

None of the above should be read as implying that Fitzner, Taylor and the Gardners are without any remedy for Holiday Isle's alleged refusal to abide by the settlement agreement.  To the contrary, at least two divergent, alternative avenues are available.  First, the May 13 Order expressly conferred upon plaintiffs the right to reinstate this action if the parties were unable to consummate their settlement within 60 days.  Should Fitzner, Taylor and the Gardners timely elect that option, their claims against Holiday Isle will be reinstated and this action will be specially set for trial during the undersigned's next civil trial term, which is slated for August 2009.  Of course, by choosing to reinstate their claims, these plaintiffs would be effectively abandoning any efforts to enforce the alleged settlement agreement in favor of pursuing their original claims.  Second, these plaintiffs' contention that Holiday Isle is refusing to honor its

---

[2]     Even if the Court were to find some jurisdictional foothold for plaintiffs' request for specific enforcement of the parties' settlement, the Court could not (as plaintiffs request) simply fire off a perfunctory order demanding that Holiday Isle proceed with settlement implementation.  The undersigned does not know whether the parties did or did not agree that acceptance by the Florida group was a condition of the Fitzner/Taylor/Gardner settlements.  The parties elected not to place the terms of their settlement on the record.  Plaintiffs' Motion provides no signed agreement purporting to set forth all material terms of the parties' agreement.  Thus, the relief contemplated by plaintiffs would necessitate an evidentiary hearing, in which attorneys for both sides would be the principal (or perhaps even only) witnesses, to receive testimony concerning the contours and scope of the parties' agreement.  Of course, without a jurisdictional hook, the Court does not reach this factual dispute.

settlement agreement with them is actionable as a state-law breach of contract claim in Alabama state court; therefore, Fitzner, Taylor and the Gardners are free to allow the 60-day reinstatement period herein to lapse and instead to file a state-court action aimed at specific enforcement of their purported settlement agreement with Holiday Isle.[3]

      In light of the foregoing, it is clear that Fitzner, Taylor and the Gardners have a choice. At a minimum, they may reinstate these proceedings and pursue their original claims against Holiday Isle (to the exclusion of enforcing the purported settlement agreement), or alternatively may file suit against Holiday Isle in state court seeking enforcement of the alleged settlement agreement (to the exclusion of pursuing their underlying claims in this action). The Court will not presume to make that strategic decision for these plaintiffs. The May 13 Order allows the settling plaintiffs 60 days to petition for reinstatement if they are unable to consummate their settlement with Holiday Isle; therefore, there remains ample time for Fitzner, Taylor and the Gardners (not to mention Holiday Isle) to weigh their options, consider these alternatives, and conduct themselves accordingly. No further judicial action will be taken at this time, pending notification of the settling plaintiffs' decision.

      **DONE** and **ORDERED** this 19th day of May, 2009.

                                    s/ WILLIAM H. STEELE
                                    UNITED STATES DISTRICT JUDGE

---

[3] Presumably, a third possibility would be for Fitzner, Taylor and the Gardners to follow the same path chosen by the Murrays by agreeing with Holiday Isle to submit their original claims to arbitration, where like claims involving numerous other claimants are pending. And a fourth option would be for counsel for both sides to return to the bargaining table to endeavor to resolve these newly surfacing differences in good faith, without further taxing the resources of their clients and the courts.